**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **KEITH JOHNSON,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | **Case No. 4:10CV 227 RWS(LMB)** |
| ) | |
| **MICHAEL BOWERSOX,** ) | |
| ) | |
| **Respondent.** ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on the petition of Keith Johnson for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

**Procedural History**

Petitioner is presently incarcerated at South Central Correctional Center in Licking, Missouri, pursuant to the judgment and sentence of the Circuit Court of the City of St. Louis. See Respondent's Ex. C at 94-98. On August 14, 2003, petitioner was found guilty after a jury trial of one count of forcible rape, three counts of armed criminal action, and two counts of forcible sodomy. See id. The Circuit Court of the City of St. Louis sentenced petitioner as a prior offender to a total of twenty five years imprisonment. See id.

In his single point raised on direct appeal, petitioner argued that the trial court erred in overruling defense counsel's objections to the State's peremptory strikes of Venirepersons Mayhew, Harvey, Lewis, Tinner, and Ward, all of whom are African-American, because the

prosecutor's reasons for striking all five venirepersons were pretextual and used as an attempt to conceal purposeful discrimination.  See Respt's Ex. A.  On April 12, 2005, the Missouri Court of Appeals for the Eastern District affirmed petitioner's convictions.  See Respt's Ex. F.

On July 27, 2005, petitioner filed a pro se Motion to Vacate, Set Aside, or Correct the Judgment or Sentence of the Circuit Court of the City of St. Louis, pursuant to Missouri Supreme Court Rule 29.15.  See Respt's Ex. I at 4-78.  After appointment of counsel, petitioner filed an amended motion and request for evidentiary hearing.  See id. at 86-136.  In this motion, petitioner raised the following claims: (1) appellate counsel failed to assert error in the trial court's finding petitioner to be a prior and persistent offender based on the docket sheets; (2) his written sentence was inconsistent with the trial court's findings and oral pronouncement; (3) he was denied a fair trial and due process because of prosecutorial intimidation when the State threatened to arrest the victim unless she testified at trial; (4) trial counsel was ineffective for failing to move for a change of judge; and (5) he was denied his rights to a conflict free counsel, due process, a fair trial and effective assistance of counsel because trial counsel had an actual conflict of interest.  See id. Petitioner's pro se motion, which included twenty-one claims, was also attached to the amended motion.  See id.  On July 7, 2008, the motion court denied petitioner's motion for post-conviction relief other than certain issues contained in the first and second allegations[1] without an evidentiary hearing.  See id. at 152-68.  Petitioner timely filed a notice of appeal from the denial of post-

---

[1]Petitioner also filed a "Nunc Pro Tunc Motion For Correction of Clerical Error in Movant's Sentence and Judgment," which the motion court granted.  Respt's Ex. I at 155.  The original sentence and judgment contained a clerical error listing petitioner as a prior and persistent offender, rather than a prior offender.  The court corrected this error in the nunc pro tunc order. See id.  The court, therefore, indicated that petitioner's allegations regarding the finding that petitioner was a prior and persistent offender were meritorious.  Id.

conviction relief on August 18, 2008.  See id. at 171.

Petitioner raised the following three points on appeal from the denial of post-conviction relief:  (1) the State committed prosecutorial intimidation; (2) trial counsel was ineffective because trial counsel failed to move for a change of judge when the judge was the same judge who signed petitioner's search warrant; and (3) trial counsel was ineffective for being ill-prepared for trial and there was a total breakdown of communication between petitioner and trial counsel.  See Respt's Ex. G at 15-18.  On May 19, 2009, the Missouri Court of Appeals for the Eastern District affirmed the denial of post-conviction relief.  See Respt's J.

On February 5, 2010, petitioner, pro se, filed a petition for a writ of habeas corpus, in which he raises five grounds for relief.  (Doc. No. 1).  On April 23, 2010, respondent filed a Response to Order to Show Cause, in which he argues that petitioner's grounds for relief fail on their merits.  (Doc. No. 10).  Petitioner filed a Reply on August 23, 2010.  (Doc. No. 19).


**Facts**

The sufficiency of the evidence is not in dispute.  The evidence presented at trial revealed that, on March 19, 2002, Tameia Walker was at the bus stop on St. Louis Avenue and Sarah in the City of St. Louis.  Respt's Ex. D at 351.  Petitioner drove by the bus stop with his friend "Lee" and offered Ms. Walker a ride.  Id. at 351-52.  Ms. Walker had met petitioner before and decided to go with him.  See id.  Ms. Walker told petitioner that she wanted to buy marijuana, and petitioner offered to take her to get some marijuana.  See id. at 354.  After purchasing marijuana, petitioner, Ms. Walker, and Lee picked up a female acquaintance of Lee from a gas station and went to petitioner's apartment.  See id. at 356.

Ms. Walker sat in the living room and smoked marijuana while petitioner cooked in the kitchen. See id. at 356-58. Lee and his acquaintance eventually left. See id. at 362. Petitioner then came to the living room where Ms. Walker was watching television and "went crazy for no reason," yelling and accusing Ms. Walker of trying to leave the apartment. Id. at 362. Petitioner hit Ms. Walker in the face with his hand, hit her on the back of the head with a gun, told her to go in the bedroom, pushed her on the bed, and ordered her to take off her clothes. See id. at 362-63. Petitioner then raped and repeatedly sodomized Ms. Walker at gunpoint. See id. at 364-69.

## Discussion

### I. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in Williams v. Taylor, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion

opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." 529 U.S. at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." Id. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

## II.    Petitioner's Claims

Petitioner raises the following grounds for relief: (1) the State intimidated the victim by threatening to arrest her if she did not testify; (2) trial counsel provided ineffective assistance in that he failed to request a change of judge; (3) trial counsel was ineffective because irreconcilable differences led to a total breakdown of communication; (4) the trial court erred in overruling petitioner's Batson objections to five African-American venirepersons; and (5) the grand jury erroneously charged him as a prior and persistent offender.

### 1.    Ground One

In petitioner's first ground for relief, he argues that the State intimidated the victim, Ms. Walker, by threatening to arrest her if she did not testify against petitioner. Petitioner claims that he was prejudiced because, had the State not intimidated Ms. Walker, her testimony would have been different and petitioner would have been acquitted. Petitioner also contends that trial

counsel was ineffective in failing to object to the State's intimidation of Ms. Walker.

Petitioner raised this claim in his post-conviction relief motion, and on appeal from the denial of post-conviction relief. The Missouri Court of Appeals held as follows:

> First, "Rule 29.15 cannot be used to obtain post-conviction review of matters which were or should have been raised on direct appeal." *State v. Tolliver*, 839 S.W.2d 296, 298 (Mo. banc 1992). A freestanding claim of prosecutorial misconduct is generally not cognizable in a Rule 29.15 proceeding. *Tisius v. State*, 183 S.W.3d 207, 213 (Mo. banc 2006). If the alleged misconduct was apparent at trial, then it is an issue for direct appeal, not a Rule 29.15 proceeding. *Id.* Because it is clear from the record that the alleged claim of prosecutorial intimidation was apparent at trial, it should have been raised on direct appeal and not in this post-conviction appeal.
>
> To the extent that Johnson is alleging that his counsel was ineffective for failing to object at trial to the alleged prosecutorial intimidation and seeking to exclude it, this argument also fails. In order to prevail on a claim of ineffective assistance of trial counsel, a defendant in a criminal case must show: (1) that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney, and (2) that he was prejudiced in that a different outcome would have resulted but for trial counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
>
> The motion court is not required to grant a movant an evidentiary hearing unless (1) the movant pleads facts, not conclusions, which if true would warrant relief, (2) the facts alleged are not refuted by the record, and (3) the matters complained of resulted in prejudice to the movant *Brooks v. State*, 208 S.W.3d 363, 365 (Mo. App. S.D. 2006). The mere failure to object does not constitute ineffective assistance of counsel. *State v. Lumpkin*, 850 S.W.2d 388, 395 (Mo. App. W.D. 1993).
>
> The record shows that trial counsel exposed the fact that Walker did not want to appear for a deposition, and there was evidence that she did not want to testify at trial. The jury was aware of Walker's reluctance to testify. Trial counsel, aware of the alleged coercion by the state, used it to undermine Walker's credibility, instead of objecting to the prosecutorial intimidation and seeking to strike Walker's testimony. This is trial strategy. "It is not ineffective assistance of counsel for an attorney to pursue one reasonable trial strategy to the exclusion of another, even if the latter would also be reasonable strategy." *Clayton v. State*, 63 S.W.3d 201, 207-08 (Mo. banc 2001). Thus, trial counsel's actions did not fall below any reasonable standard. Point denied.

Respt's Ex. J at 2-3.

Petitioner's freestanding prosecutorial misconduct claim is procedurally defaulted. As a prerequisite to seeking federal habeas corpus relief, a state prisoner must fairly present his claims

to the state courts on direct appeal or in post-conviction proceedings. <u>Murphy v. King</u>, 652 F.3d 845, 848-50 (8th Cir. 2011) (citing <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State")).  A claim is also procedurally barred from federal review if the state court relied upon a state procedural rule as an independent and adequate basis for its disposition of the claim. <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 327 (1985).  A state prisoner can overcome procedural default if he can demonstrate cause and actual prejudice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Battle v. Delo</u>, 19 F.3d 1547, 1552 (8th Cir. 1994).  A demonstrated claim of actual innocence will also overcome procedural default. <u>United States v. Moss</u>, 252 F.3d 993, 1001 (8th Cir. 2001) (citing <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998)).

In this case, petitioner did not raise his prosecutorial misconduct claim in his direct appeal. The Missouri Court of Appeals declined to review petitioner's claim, noting that petitioner could not raise issues in post-conviction proceedings that should have been raised on direct appeal. Petitioner fails to allege cause for his procedural default, nor does he allege actual innocense. Consequently, petitioner's prosecutorial misconduct claim is procedurally defaulted and should be denied.

Petitioner also alleges an ineffective assistance of counsel claim based on trial counsel's failure to object to the alleged prosecutorial intimidation of Ms. Walker.  To prevail on an ineffective assistance of counsel claim, petitioner must demonstrate (1) that the attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and (2) that the attorney's action or inaction prejudiced the petitioner. <u>See</u>

Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." Id. "Prejudice" is shown by a petitioner when it is demonstrated that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Id. The petitioner must not only assert prejudice, but must affirmatively prove that prejudice was present. See id. at 693. A habeas petitioner "must overcome the strong presumption that in the circumstances of his case 'the challenged action might be considered sound trial strategy.'" Seehan v. State of Iowa, 72 F.3d 607, 611 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 689)).

When a prosecutor obtains a conviction by the use of testimony which he or she knows or should know is perjured, it has been consistently held that such conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. See United States v. Agurs, 427 U.S. 97, 103 (1976). The same result follows when the prosecutor, although not soliciting false evidence, allows it to go uncorrected when it appears. Napue v. Illinois, 360 U.S. 264, 269 (1959).

At trial, defense counsel cross-examined Ms. Walker extensively about her reluctance to testify. Defense counsel stated, "isn't it true that the State threatened to have you arrested if you failed to come in and testify?" Respt's Ex. D at 413. The prosecutor objected, and a bench conference was held. Id. Defense counsel explained that Ms. Walker failed to appear for depositions, and that this was relevant to her credibility. Id. The prosecutor withdrew her objection to this line of questioning, and defense counsel proceeded to question Ms. Walker

regarding her failure to appear at depositions.  Id. at 414-15.  Defense counsel again asked, "isn't it true that the State threatened to have you arrested if you didn't show up [for your deposition]?"  Id. at 415.  Ms. Walker responded "[y]es."  Id.

On redirect, the following exchange occurred:

> [Prosecutor]:  --you didn't want to come down to give a deposition in this case, did you?
> [Ms. Walker]: No.
> [Prosecutor]: And you were forced to come down, weren't you?
> [Ms. Walker]: Yes.
> [Prosecutor]: Why didn't you want to come down and testify?
> [Ms. Walker]: Because I didn't want to see him.
> [Prosecutor]: Why didn't you want to see him?
> [Ms. Walker]: Because I don't understand how he going to not be guilty for it when he know he did it.
> [Prosecutor]: You didn't want to come in here and testify against him today, did you?
> [Ms. Walker]: No.
> [Prosecutor]: And I made you do that, didn't I?
> [Ms. Walker]: Yes.
> [Prosecutor]: Is everything you told the jury today the truth?
> [Ms. Walker]: Yes.
> [Prosecutor]: Is everything you told the defense attorney in your deposition the truth?
> [Ms. Walker]: Yes.

Id. at 415-16.

The Missouri Court of Appeals held that defense counsel made the jury aware of Ms. Walker's reluctance to testify in an effort to undermine her credibility, and that this was reasonable trial strategy.  This finding is supported by the record.  The Missouri Court of Appeals properly applied Strickland and found that defense counsel's actions of attacking Ms. Walker's credibility rather than objecting on the basis of prosecutorial intimidation did not fall below a reasonable standard.

Further, even if defense counsel had objected on the basis of prosecutorial intimidation,

this objection would not have been sustained.  Petitioner has presented no evidence that the

prosecution elicited false testimony from Ms. Walker.  Rather, the record reveals that the

prosecutor used legitimate means to ensure that Ms. Walker appeared for her deposition and trial

to testify truthfully.  The physical evidence presented by the State corroborated Ms. Walker's

testimony.  Defense counsel did not provide ineffective assistance in failing to make a meritless

objection.

Accordingly, the undersigned recommends that petitioner's first ground for relief be

denied.

## 2.    Ground Two

In his second ground for relief, petitioner argues that trial counsel provided ineffective

assistance in that he failed to request a change of judge on the basis that the trial judge had

previously signed the search warrant for petitioner's residence.  Petitioner contends that the trial

judge was already aware of the facts contained in the probable cause statement, thus depriving

petitioner of a fair trial.

Petitioner raised this claim in his post-conviction relief motion and in his appeal from the

denial of post-conviction relief.  The Missouri Court of Appeals held as follows:

> [Petitioner] fails to allege facts warranting relief.  A trial judge is presumed to be
> impartial when presiding over a trial.  *State v. Ayers*, 911 S.W.2d 648, 651 (Mo. App.
> S.D. 1995).  This presumption is not overcome unless a reasonable person would find an
> appearance of impropriety and doubt the impartiality of the trial court.  *Smulls v. State*, 10
> S.W.3d 497, 499 (Mo. banc 2000).  The bias or prejudice of the judge must result from a
> factual context that requires disqualification.  *Id.*  There must be an extrajudicial source
> that results in the trial court forming an opinion on the present case.  *Id.*  [Petitioner]
> alleges that the trial judge was biased and incapable of providing [petitioner] a fair trial
> because the judge was the same judge who signed [petitioner]'s search warrant and thus
> was aware of facts stated in the probable cause statement.  This is insufficient to establish
> bias.  The information in the probable cause statement is not "extrajudicial."  Further,

[petitioner] fails to allege what facts the judge was aware of and how knowledge of those facts would bias the judge. Finally, the jury, not the judge was the trier of fact in this case. Point denied.

Respt's Ex. J at 4.

In assessing judicial bias, the relevant inquiry is "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002) (en banc). Because a judge is presumed to be impartial, the party seeking disqualification "bears the substantial burden of proving otherwise." Bannister v. Delo, 100 F.3d 610, 614 (8th Cir. 1996) (internal quotations omitted). Bias can be shown "if a judge's remarks or opinions 'reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Id. (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)).

In this case, petitioner has failed to point to any evidence that the trial judge was biased. The trial judge's impartiality would not reasonably be questioned simply because the judge became aware of some of the facts of petitioner's case through signing the search warrant. Consequently, trial counsel did not act unreasonably in failing to request a change of judge. The decision of the Missouri Court of Appeals was not an unreasonable application of clearly established federal law.

Accordingly, the undersigned recommends that petitioner's second ground for relief be denied.

**3.      Ground Three**

In his third ground for relief, petitioner argues that trial counsel was ineffective because "their irreconcilable differences led to a total breakdown of communication." Doc. No. 1 at 21.

Petitioner raised this claim in his post-conviction proceedings. The Missouri Court of Appeals held as follows:

> Before a defendant is entitled to have counsel removed for irreconcilable differences, he must show a total breakdown in communications between himself and his attorney. *Vogel v. State*, 31 S.W.3d 130, 147 (Mo. App. W.D. 2000). "Merely disagreeing with the advice of counsel over trial strategy is insufficient to establish a total breakdown of communication requiring a substitution of trial counsel." *Id.* Any claim by [petitioner] that there was a total breakdown in communications between him and his attorney is refuted by the record. The record shows that [petitioner] discussed his rights with his attorney and discussed the witnesses he could call in his defense, that counsel reviewed the police reports with [petitioner], that [petitioner] communicated with counsel throughout the trial, and that there was nothing that counsel failed to do for [petitioner] during trial.
> Further, to the extent that [petitioner] is arguing that trial counsel was ineffective for failing to prepare for trial, the record refutes this claim. The record shows that counsel filed motions on [petitioner]'s behalf, vigorously cross-examined the state's witnesses, filed exhibits, and argued to the jury [petitioner]'s defense. Point denied.

Resp't's Ex. J at 4-5.

The appointment of substitute counsel is only warranted when the defendant demonstrates justifiable dissatisfaction with his appointed attorney. United States v. Barrow, 287 F.3d 733, 737 (8th Cir. 2002). Justifiable dissatisfaction sufficient to merit substitution of counsel includes "a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991). The defendant's right to counsel, however, "does not involve the right to a 'meaningful relationship' between an accused and his counsel." United States v. Swinney, 970 F.2d 494, 499 (8th Cir. 1992) (quoting United States v. Machor, 879 F.2d 945, 952 (1st Cir. 1989)). There is not good cause for substitution of counsel when the defendant is frustrated with counsel who does not share the defendant's tactical opinions but continues to provide zealous representation. Barrow, 287 F.3d at 738. When a lawyer encourages a defendant to plead guilty, courts have held that

that does not constitute justifiable dissatisfaction warranting the appointment of new counsel.  Id.

Moreover, a defendant does not have an absolute right to counsel of his own choosing.  United

States v. Vallery, 108 F.3d 155, 157 (8th Cir. 1997).

Petitioner claims that trial counsel was unprepared for trial, and pressured petitioner to

plead guilty.  Petitioner contends that the irreconcilable differences between petitioner and trial

counsel led to a total breakdown of communication.  The record refutes petitioner's claims.

At trial, the court questioned petitioner regarding his decision not to testify.  Respt's Ex.

D at 460-63.  Petitioner testified that he had had enough time to talk with his attorney regarding

whether or not to go to trial, that his attorney had done what he asked her to do leading up to

trial, that he had had sufficient opportunity to talk with counsel throughout the trial, and that he

and his attorney continued to discuss the benefits and risks of testifying on his own behalf.  See id.

at 460-61.  At the sentencing hearing, petitioner again stated that he had had enough time to talk

with his attorney before he made his decision to go to trial, and that he had an opportunity to talk

with his attorney during the course of the trial.  Respt's Ex. E at 96.  Petitioner testified that he

had no concerns about the way counsel handled the trial.  See id. at 97.  Petitioner also expressed

satisfaction with counsel's pre-trial work, including her investigation of potential defense

witnesses and providing petitioner with police reports, except that he had not received the grand

jury transcript.  See id. at 94-96.  Petitioner's own representations refute his claim that there was

a breakdown in communication with his attorney.

Further, although petitioner claims that counsel was unprepared for trial, the record

reveals that counsel filed motions on petitioner's behalf, vigorously cross-examined the State's

witnesses, filed exhibits, and presented a defense theory to the jury.

Petitioner's claim that irreconcilable differences led to a total breakdown of communication with counsel is not supported by the record. Rather, the record indicates that, although petitioner may have been frustrated with counsel because she did not share his tactical opinions, she continued to provide zealous representation. The decision of the Missouri Court of Appeals rejecting petitioner's claim is not contrary to or an unreasonable application of clearly established federal law.

Accordingly, the undersigned recommends that petitioner's third ground for relief be denied.

### 4.     Ground Four

In his fourth ground for relief, petitioner argues that the trial court erred in overruling his Batson objections to five venirepersons.

Under Batson, the trial court must engage in a three-step inquiry to determine the validity of peremptory challenges. Batson v. Kentucky, 476 U.S. 79 (1986). Under the first step, a defendant must make a prima facie case of discrimination. Smulls v. Roper, 535 F.3d 853, 859 (8th Cir. 2008) (citing Rice v. Collins, 546 U.S. 333, 338 (2006)). "To establish a prima facie case, the defendant must show that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove members of his race from the venire." Devose v. Norris, 53 F.3d 201, 204 (8th Cir. 1995).

If a prima facie case is made, the burden shifts to the prosecution to articulate a race-neutral explanation for striking the prospective juror. At stage two, "a court does not weigh the plausibility of the reasons given by the state, but merely determines whether the reasons are facially race-neutral." Gibson v. Bowersox, 78 F.3d 372, 374 (8th Cir. 1996). The prosecutor's

stated reason need not be "persuasive, or even plausible" as long as it is not inherently discriminatory.  Smulls v. Roper, 535 F.3d 853, 859 (8th Cir. 2008) (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995)).  Finally, "[i]f the government gives a race-neutral reason, the reviewing court must decide whether the defendant has proven purposeful discrimination by evaluating the persuasiveness of the proffered reason."  Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997).  Throughout this process, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."  Purkett v. Elem, 514 U.S. 765, 768 (1995).  A trial court's ultimate finding on whether a race-neutral explanation is merely a pretext for discrimination is a question of fact, which is presumed correct in the federal habeas context.  See Gibson, 78 F.3d at 374.  Such findings will only be set aside, absent procedural error, if they are "not fairly supported by the record."  Id. (quoting Purkett, 514 U.S. at 769).

Petitioner, who is African-American, made timely Batson challenges with respect to Venirepersons Troy Mayhew, Paula Harvey, Eldwyn Lewis, Brenda Tinner, and Calvin Ward, who are also African-American.  Petitioner raised this claim in his direct appeal.  The undersigned will discuss each venireperson in turn.

**Venireperson Troy Mayhew**

The prosecutor provided the following explanation for the strike of Mr. Mayhew:

> With regard to juror number 67, Troy Mayhew, my race neutral reason for striking that juror is that he was the person who we called up who we had checked on our list that he had criminal charges pending, and I don't feel that he gave a very straightforward answer when he was asked why that showed up on his juror questionnaire.  He just kept saying he didn't fill out a juror questionnaire.  And your Honor, I felt like he wasn't being honest about it.
> I do--I will note that I have access to his records, and I see a disturbing the peace

- 15 -

citation, and I don't know of any criminal charges pending; however, I didn't feel like he was being forthright when he made his responses at the bench.

Respt's Ex. D at 179.

Defense counsel responded that the disturbing the peace citation did not qualify for nondisclosure. Id. at 179-80. Defense counsel also noted that the response provided on the questionnaire could be a clerical error. Id. at 180. The court denied petitioner's motion, noting that petitioner checked the box for criminal charges pending and completed answers for all eleven of the questions, and that the jury supervisor would not have provided these answers. Id. at 190.

The Missouri Court of Appeals held as follows:

We find no clear error in the court's denial of defendant's *Batson* challenge as to venireperson Mayhew. The prosecutor's explanation that she struck Mr. Mayhew because his answers did not seem truthful and forthright was a reasonably specific, race-neutral explanation. *See State v. Shurn*, 866 S.W.2d 447, 456 (Mo. banc 1993). It is clear from our review of the record that the trial court viewed the plausibility of the prosecutor's explanation in light of the totality of the facts and circumstances of the case, and that the court took a permissible view of the evidence in crediting the prosecutor's explanation. The trial court apparently found both Mr. Mayhew and the defense argument regarding the juror questionnaire to be unpersuasive. The trial court was in the best position to observe Mr. Mayhew, to listen to the manner in which he answered the questions, and to assess the State's reasons for the strike. We defer to that determination. And while we do not have the opportunity to review the demeanor of the venireperson or the prosecutor, there are other objective facts in the record which support a finding of no intent to discriminate. The prosecutor did not use all of the State's peremptory strikes to exclude African-Americans. The victim in the case was also African-American. Such factors are relevant to show that the race of the jurors was not a motive for the State's strike of Mr. Mayhew, or of any of the other challenged strikes.

Respt's Ex. F at 5-6.

"[A] federal habeas court can only grant [the] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge. State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' § 2254(e)(1)." Rice v. Collins, 546 U.S. 333, 338-39 (2006).

See also Cole v. Roper, 623 F.3d 1183, 1188-89 (8th Cir. 2010).

The prosecutor indicated that she struck Mr. Mayhew because he indicated on his juror questionnaire that he had criminal charges pending and was not straightforward when questioned about this issue. The prosecutor also noted that Mr. Mayhew was cited for disturbing the peace. These are valid, race-neutral reasons for striking a prospective juror. See United States v. Wilcox, 487 F.3d 1163, 1170 (8th Cir. 2007) (criminal record is a proper race-neutral reason for striking a juror). The decision of the Missouri Court of Appeals that the prosecutor's reasons for striking Mr. Mayhew were race-neutral was reasonable.

**Venireperson Paula Harvey**

The prosecutor provided the following explanation for striking Ms. Harvey:

> Ms. Harvey is unemployed and she has a tenth grade education. And it is noted for the Court--for the record that this is a highly educated panel with very few people having less than a high school education, and it's the State's position that someone who is unemployed is not a good juror for the State.

Respt's Ex. D at 181.

Defense counsel argued that the prosecutor's reasons for striking Ms. Harvey were pretextual because there were other jurors on the panel who were unemployed. Id. at 181-82. The prosecutor replied that the jurors to which defense counsel referred were homemakers rather than unemployed and were not, therefore, similarly situated. Id. at 182. The prosecutor also argued that education was a race-neutral reason for striking a potential juror. Id. The court denied defense counsel's Batson motion with regard to Ms. Harvey, noting that unemployment and education were valid race-neutral reasons. Id. at 191.

The Missouri Court of Appeals held as follows with regard to petitioner's claim:

As the trial court noted, both employment and education are valid race-neutral bases for exercising a peremptory strike. *See* <u>State v. Williams</u>, 97 S.W.3d 462, 472 (Mo. banc 2003); <u>State v. Hill</u>, 808 S.W.2d 882, 889 (Mo. App. E.D. 1991). The defendant argues that the prosecution failed to explain how Ms. Harvey's lack of education would affect her ability to sit on the jury. The prosecutor's explanation, however, need not rise to the level justifying exercise of a challenge for cause. <u>Batson</u>, 476 U.S. at 96. The defendant also argues that by informing the court of two similarly-situated white venirepersons, defense counsel showed that the prosecutor's proffered reasons for striking Ms. Harvey were pretextual. We first note that there was no showing that these two white venirepersons lacked a high-school education as Ms. Harvey did. Moreover, these two white venirepersons were both married homemakers. And further, even if these two white venirepersons were similarly situated, the existence of similarly-situated white venirepersons who were not struck is some proof of pretext; however, it is not dispositive. <u>Barnett</u>, 980 S.W.2d at 302. The defendant offered no other argument to show that the State's proffered reasons were merely pretextual. We find no clear error in the court's denial of defendant's <u>Batson</u> challenge as to venireperson Harvey.

Respt's Ex. F at 7.

The prosecutor's articulated reasons for striking Ms. Harvey were race-neutral. <u>See</u> <u>United States v. Atkins</u>, 25 F.3d 1401, 1406 (8th Cir. 1994) (sporadic work history permissible reason); <u>United States v. Hunter</u>, 86 F.3d 679, 683 (8th Cir. 1996) (upholding strike based on limited education). The decision of the Missouri Court of Appeals was consistent with federal law.

**Venireperson Eldwyn Lewis**

The prosecutor provided the following explanation for striking Mr. Lewis:

> Mr. Lewis stated in voir dire that he has two nephews who were accused of sexual assault, and Mr. Lewis also talked in depth about having bad feelings about the police based on what he believes is a history with the police of making pretextual stops of African-American people.
> I would note also that Mr. Lewis, although he did disclose it, he does have a prior arrest and conviction in 1999 for possession of controlled substance.

Respt's Ex. D at 183.

Defense counsel argued that the prosecutor's reasons for striking Mr. Lewis were

pretextual because Mr. Lewis was a sociologist, and indicated that he could put his knowledge

aside and be impartial.  Id. at 183-84.  Defense counsel also noted that there were other white

jurors whose family members had been convicted of crimes.  Id. at 184.  The court denied defense

counsel's Batson challenge, noting that Mr. Lewis indicated that his two nephews who had been

accused of sexual assault have suffered consequences through the rest of their lives as a result of

their convictions, and that Mr. Lewis expressed a strong suspicion about the motivation of police.

Id. at 185.

> The Missouri Court of Appeals held as follows:

> > The prosecutor proffered reasonably specific, clear, race-neutral reasons for striking Mr. Lewis.  *See* Dunn, 906 S.W.2d at 390 (family member arrested); State v. Nettles, 10 S.W.3d 521, 525 (Mo. App. E.D. 1999) (preconceived bias against police). The record does not support the defendant's contention that there were three similarly-situated white venirepersons who were not struck by the State.  None of these alleged similarly-situated venirepersons expressed a strong bias against the police, nor had a criminal conviction, as Mr. Lewis did.  Further, the three venirepersons claimed to be similarly situated did not have a close friend or relative accused or convicted of a crime, as did Mr. Lewis.  Rather, they had close friends or relatives who had been, or were themselves, a victim of a sex crime.  We find no clear error in the court's denial of defendant's *Batson* challenge as to venireperson Lewis.

Respt's Ex. F at 8.

> The prosecutor struck Mr. Lewis because he had close family members who were accused

of sexual assault, he expressed suspicion about police, and he had been convicted of possession of

a controlled substance.  These have been found to be valid, race-neutral reasons for striking a

prospective juror.  See United States v. Boyd, 168 F.3d 1077, 1077-78 (8th Cir. 1999) (striking a

juror because of a relative who served or was serving a sentence is a valid, race-neutral reason);

Wilcox, 487 F.3d at 1170 (criminal record is a proper race-neutral reason for striking a juror).

Thus, the decision of the Missouri Court of Appeals complied with federal law.

**Venireperson Brenda Tinner**

The prosecutor provided the following explanation for striking Ms. Tinner:

> Ms. Tinner, your Honor, stated that she's a youth leader in juvenile--that she works with juvenile offenders, and that she has done so for quite a long time. She knows and is acquainted with the Juvenile Public Defender, public defenders in the system in this jurisdiction. And I struck that juror based on her employment, and how I think it would affect her ability or how I think it would affect her in this case.

Respt's Ex. D at 186.

Defense counsel argues that the prosecutor's strike of Ms. Tinner was pretextual because there was another white juror who worked with victims of sex crimes and was a victim of a sex crime herself. Id. at 187. The prosecutor stated that Ms. Tinner also indicated that she had an altercation with a police officer in 1999, which distinguished her from the white juror. Id. In addition, the prosecutor argued that Ms. Tinner knew the juvenile public defenders and was familiar with the system. Id. The court denied defense counsel's Batson motion, finding that the prosecutor stated multiple race-neutral grounds, and noting that Ms. Tinner also emphasized several times that she had strong feelings against the police in Hazelwood. Id. at 188.

The Missouri Court of Appeals held as follows:

> We find no clear error in the court's denial of defendant's *Batson* challenge as to venireperson Tinner. The State's explanations for striking Ms. Tinner are reasonably specific and race-neutral, and the defendant failed to show that the State's proffered reasons were merely pretextual. Defendant's sole argument to demonstrate pretext was that there was a similarly-situated white venireperson, Ms. Orr, whom the State did not strike. A review of the record, however, reveals the two venirepersons are easily distinguishable. Unlike Ms. Tinner, Ms. Orr was not acquainted with attorneys from the Public Defender's Office, and did not express negative feelings for the police. Further, Ms. Orr was a victim of a sex crime, while Ms. Tinner was not. Clearly, Ms. Orr did not possess all of the characteristics that the prosecutor cited in striking Ms. Tinner.

Resp't's Ex. F at 9-10.

The prosecutor struck Ms. Tinner due to her employment with the juvenile criminal justice system. This has been found to be a valid race-neutral reason for striking a potential juror. See United States v. Maxwell, 473 F.3d 868, 872 (8th Cir. 2007) (inference that juror's employment might make the juror more sympathetic to a criminal defendant is valid, race-neutral reason for striking a juror). The prosecutor also noted that Ms. Tinner had had an altercation with a police officer. The decision of the Missouri Court of Appeals was consistent with clearly established federal law.

**Venireperson Calvin Ward**

The prosecutor provided the following explanation for her strike of Mr. Ward:

> Mr. Ward, your Honor, I actually got less information from that juror than anybody else who is within the group that were choosing from, the first 24. However, I do have information that he's had a stealing citation in the past. And again, while I don't believe that the citation is a reason to move for cause, that is my reason for striking him, together with the fact that I don't have any information on him.

Resp't's Ex. D at 188.

Defense counsel stated that Mr. Ward's stealing citation was not a reason he should be struck, and that there were similarly situated white jurors about which the State had very little information. Id. at 189. The court denied defense counsel's Batson challenge, stating that appellate courts have recognized lack of information about a person as a valid ground for a peremptory strike. Id.

The Missouri Court of Appeals held as follows:

> Again, the State proffered race-neutral reasons for striking Mr. Ward. *See* State v. Dixon, 854 S.W.2d 521, 523 (Mo. App. E.D. 1993) (striking venireperson giving few

answers); State v. Pullen, 843 S.W.2d 360, 363 (Mo. banc 1992) (striking venireperson who failed to disclose previous arrest). And, while the defendant argues that Mr. Ward's citation is not a reason to strike him, again, the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. The defendant also argued that there were two similarly-situated white venirepersons who the State did not strike. A review of the record, however, reveals that these two Venirepersons did not conceal any prior citations and thus did not possess all of the characteristics that the prosecutor cited in striking Mr. Ward.

Respt's Ex. F at 10.

The prosecutor's explanation for striking Mr. Ward-that he provided less information than everyone else-has been found to be a valid race-neutral reason for striking a potential juror. See Barnett v. Roper, 541 F.3d 804, 812 (8th Cir. 2008) (silence during general questions to the venire is a valid neutral reason for a strike). The prosecutor also indicated that Mr. Ward had a stealing citation, which is an additional race-neutral reason for striking Mr. Ward. See Wilcox, 487 F.3d at 1170. The decision of the Missouri Court of Appeals is consistent with clearly established federal law.

In sum, the Missouri Court of Appeals found that the prosecutor provided race-neutral reasons for striking each of the five challenged venirepersons. This determination is supported by the record. Petitioner has failed to present clear and convincing evidence that entitles him to overcome the presumptively correct findings of the state court.

Accordingly, the undersigned recommends that petitioner's fourth ground for relief be denied.

### 5. Ground Five

In his fifth ground for relief, petitioner argues that the grand jury erroneously charged him as a prior and persistent offender. Petitioner further argues that the sentence and judgment listed

him as a prior and persistent offender, and that the trial court sentenced petitioner as a prior and

persistent offender.  Respondent contends that petitioner's ground for relief is procedurally

defaulted, non-cognizable, and meritless.

In his post-conviction motion, petitioner argued that appellate counsel was ineffective for

failing to raise the claim that the trial court erred in finding petitioner to be a prior and persistent

offender based on docket sheets.  The motion court found that petitioner's argument was

meritorious to the extent petitioner was found to be a persistent offender, and indicated that it had

entered an "Order Granting Nunc Pro Tunc Motion to Correct Judgment and Sentence."  Respt's

Ex. I at 155.  The motion court stated that it based its findings that petitioner was a prior offender

on the file in Cause No. 831-28011-B.  Id.

Petitioner also argued in his post-conviction motion that his written sentence was

inconsistent with the trial court's findings and oral pronouncement.  The motion court found that

this allegation was meritorious, and indicated again that it had entered an "Order Granting Nunc

Pro Tunc Motion to Correct Judgment and Sentence."  Id.

 On appeal from the denial of post-conviction relief, petitioner did raise any claims

regarding his status as a prior and persistent offender.

"Ordinarily a federal court reviewing a state conviction in a [§ 2254] proceeding may

consider only those claims which the petitioner has presented to the state court in accordance with

state procedural rules."  Arnold v. Dormire, 675 F.3d 1082, 1086 (8th Cir. 2012).  "In Missouri, a

claim must be presented at each step to avoid default."  Id. at 1087 (citing Jolly v. Gammon, 28

F.3d 51, 53 (8th Cir. 1994)) (internal quotations omitted).  "A state prisoner who defaults on his

federal claims in state court because of a state procedural rule is barred from federal habeas

review unless the prisoner can show cause and prejudice." Id. "Cause is something external to the petitioner, something that cannot fairly be attributed to him." Id.

In this case, petitioner failed to raise the claim contained in his fifth ground for relief on direct or post-conviction appeal. Petitioner's claim is, therefore, procedurally defaulted. Petitioner claims that he raised this claim in a state habeas petition filed pursuant to Missouri Supreme Court Rule 91 in the Circuit Court of Texas County. Petitioner's filing of a state habeas petition, however, does not remedy his default. Storey v. Roper, 603 F.3d 507, 523 (8th Cir. 2010). State habeas relief is "very limited, and courts are not required to issue this extraordinary writ where other remedies are adequate and available." Clay v. Dormire, 37 S.W.3d 214, 217 (Mo. 2000).

Petitioner fails to allege cause for his procedural default, nor does he allege actual innocence. Consequently, petitioner's fifth ground for relief is procedurally defaulted and should be denied.

Even if petitioner's ground for relief were not procedurally defaulted, it fails on its merits as well. "Sufficiency of an indictment or information is primarily a question of state law." Goodloe v. Parratt, 605 F.2d 1041, 1045 n. 12 (8th Cir. 1979). "Due process requirements are satisfied if a defendant receives actual notice of the charges against him, even if the indictment or information is deficient." Hulstine v. Morris, 819 F.2d 861, 864 (8th Cir. 1987). Petitioner does not dispute that he received notice of the charges against him. Thus, petitioner has failed to allege a claim cognizable in a federal habeas corpus proceeding.

Further, petitioner's claim is meritless, as the state court corrected the clerical error listing petitioner as a prior and persistent offender in a nunc pro tunc order. Respt's Ex. I at 155.

Petitioner was not prejudiced by this clerical error because the court held a prior offender hearing during trial, and determined that petitioner was a prior offender rather than a prior and persistent offender. Respt's Ex. D at 457.

Accordingly, the undersigned recommends that petitioner's fifth ground for relief be denied.

## III. <u>Certificate of Appealability</u>

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Hunter v. Bowersox</u>, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. <u>See</u> <u>Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997)(citing <u>Flieger v. Delo</u>, 16 F.3d 878, 882-83 (8th Cir. 1994)); <u>Tokar v. Bowersox</u>, 1 F. Supp.2d 986, 1016 (E.D. Mo. 1998). In this case, petitioner has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the petition of Keith Johnson for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied.**

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.

Dated this 22nd day of January, 2013.

_Lewis M. Blanton_
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE